IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL S. T.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:24-cv-02167-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Michael T. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**BACKGROUND**

Born in April 1969, plaintiff alleges disability beginning August 15, 2019, due to "deteriorated padding in shoulders, limited mobility, pain, neuropathy, type 2 diabetes, depression, insomnia, herniated discs, fatigue, [and] asthma." Tr. 176, 199. His application was denied initially and upon reconsideration. On October 20, 2023, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-47. On December 15, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-23. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "diabetes mellitus; obesity; lumbar degenerative disc disease; pars defect; osteoarthritis of the left shoulder; neuropathy; peripheral vascular disease; and obstructive sleep apnea."[2] Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) "except he is limited to frequent stooping, occasionally climbing ramps

---

[2] The ALJ found plaintiff's anxiety and depression medically determinable but not severe at step two. Tr. 18.

Page 2 – OPINION AND ORDER

and stairs, never climbing ladders/ropes/scaffolds [and] occasionally reach[ing] overhead bilaterally." *Id.*

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as marker, collator operator, and routing clerk. Tr. 22-23.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting the medical opinion of Clem Pope, Physician Assistant.[3]

## I.    Medical Opinion Evidence

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

---

[3] To the extent plaintiff challenges the ALJ's rejection of Mr. Pope's opinion based on SSR 18-3p, his argument is unavailing. Pl.'s Opening Br. 6 (doc. 9); Pl.'s Reply Br. 2 (doc. 11). Both the plain language of this regulation and the weight of authority from within the Ninth Circuit establish that SSR 18-3p is inapplicable in this context. *See, e.g.*, *Nacole S. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 247242, *4 n.4 (D. Or. Jan. 23, 2024); *see also Flores v. Dudek*, 2025 WL 1167819, *4 n.5 (E.D. Cal. Apr. 22, 2025) (collecting cases).

Page 3 – OPINION AND ORDER

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On October 20, 2022, plaintiff initiated care with Mr. Pope. Tr. 1259. In the year-long period leading up to the October 2023 hearing, Mr. Pope saw plaintiff six times: three times between October and December 2022, and three times between August and September 2023. Tr. 1167-71, 1174-79, 1181-1190, 1214-18, 1225-31, 1233-36, 1259-63. Mr. Pope's chart notes between October and December 2022 relate largely to plaintiff's heart palpitations and diet/poorly managed blood glucose levels. Tr. 1214-18, 1225-31, 1233-36, 1259-63. In contrast, Mr. Pope's chart notes from August to September 2023 focus on plaintiff's increased mental health symptoms, lack of compliance with prescribed medications, and neuropathy. Tr. 1167-71, 1174-79, 1181-1190.

On September 20, 2023, Mr. Pope completed a "Residual Physical Functional Capacity Assessment" at the request of plaintiff's counsel, in which he listed plaintiff's diagnoses as: "anxiety disorder, depressive disorder, type 2 diabetes, neuropathy, history of [indecipherable], history of PE [pulmonary embolism]." Tr. 1165. Mr. Pope described plaintiff's "primary" symptoms as follows:

> Depression and anxiety to the level he cannot leave his house or function/participate in activities with others. Blood sugar is very hard to manage. He experiences neuropathy that limits activity.

*Id.*

Mr. Pope then went on to opine that plaintiff could: lift or carry less than 10 pounds occasionally and/or frequently; occasionally push/pull reach, handle, and finger; and stand or walk for less than 2 hours, and sit for up to 5 hours, in an 8-hour workday. Tr. 1166.

Page 4 – OPINION AND ORDER

Additionally, Mr. Pope specified that plaintiff would be expected to miss over 16 hours per month due to his anxiety. *Id.*

The ALJ found Mr. Pope's opinion "not persuasive" because:

it is not consistent with the overall record, including [plaintiff's] subjective complaints during his treatment with Dr. Pope. [Plaintiff] reported improvement in his depression symptoms with medication and does not express being unable to leave home on a consistent basis. Also, Dr. Pope urged [plaintiff] to control his blood sugar to help decrease his neuropathy. It appears [plaintiff] was not consistent with keeping a good diet. And he was not always medicated for his diabetes condition.

Tr. 21 (internal citations omitted).

An independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Mr. Pope's opinion, along with the additional sub-factors, is not supported by substantial evidence. As a preliminary matter, the ALJ mischaracterizes the tone and the content of the record as it relates to plaintiff's mental health. *Cf. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). In particular, the record reflects that plaintiff's mental health symptoms are longstanding but cyclical and have negatively impacted his physical health. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)) ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

For instance, in October 2021, plaintiff was admitted to the hospital for an acute saddle pulmonary embolism, at which point his "diabetes [was] poorly controlled [and he was experiencing] dyslipidemia[,] depression and peripheral neuropathy." Tr. 536, 596. Plaintiff

Page 5 – OPINION AND ORDER

admitted that he had stopped taking his diabetes medication and was in the midst of a bipolar "down cycle." Tr. 538, 552, 580. Plaintiff nonetheless did not immediately begin managing his blood sugar, noting to a provider at Mr. Pope's clinic that "he has been having some depression [and it] helped to have company at the hospital but he lives alone"; and he was not interested in medication or counseling at that time. Tr. 727.

However, plaintiff's mental health symptoms began to increase in December 2021, and, by April 2022, he had resumed counseling for his depression and "long standing grief and loneliness." Tr. 678, 1063, 1128-30, 1134. In September 2022, plaintiff's "depression [wa]s affecting his health" and, while antidepressants helped him feel a "little less despondent," they also made him feel numb. Tr. 1282, 1288, 1294. Plaintiff's mental health fluctuated considerably in October and November 2022, with symptoms of depression negatively impacting his eating choices (and, by extension, his blood sugar) and causing feelings of hopelessness. Tr. 1236, 1246, 1252, 1270. However, plaintiff's symptoms began to improve due to an inheritance that eliminated his financial stressors such that, by December 2022, he was more motivated and making plans for the future, including a potential trip to Maine. Tr. 1223. Plaintiff ceased counseling at that time.

But, as reflected in Mr. Pope's records, plaintiff's mental health symptoms had once again increased by August 2023. In fact, that month Mr. Pope repeatedly assessed plaintiff using the PHQ-9 scale, wherein he rated above 20, indicating severe depression.[4] Tr. 1177,

---

[4] The PHQ-9 "refers to a specific patient health questionnaire that . . . is an instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care." *Salina S. v. Kijakazi*, 2022 WL 3700880, *5 n.3 (D. Idaho Aug. 25, 2022) (citation and internal quotations and brackets omitted). "PHQ-9 scores are generally interpreted as follows: minimal depression (0-4); mild depression (5-9); moderate depression (10-14); moderately severe depression (15-19); severe depression (20-27)." *Id.* at n.4 (citation omitted). Although ALJs are not "required to universally credit PHQ-9 scores or let them drive

Page 6 – OPINION AND ORDER

1190. Likewise, plaintiff's GAD-7 screenings from that month revealed scores of 10 or more, denoting moderate anxiety.[5] Tr. 1177, 1184. Indeed, plaintiff reported feeling "very depressed and unmotivated over the last couple months," which resulted in the "loss of [the] ability to take care of himself." Tr. 1184-85.

> Thus, according to Mr. Pope:
>
> [Plaintiff has] a very long history of depression. It is currently taking over his life and he is unable to function or participate. He very very rarely leaves his house and has little in the way of social interaction. His depression is overshadowing his other chronic medical issues such as diabetes. He denies suicidal ideation. We have placed a referral for behavioral health, I do think that in person frequent visits would be most beneficial for him. We have restarted him on his most recent antidepressant . . . We do need to address his diabetes, but I think this will be very dependent on successfully managing his depression.

Tr. 1178; *see also Garrison,* 759 F.3d at 1018 n.24 ("we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions").

By September 2023, plaintiff had experienced "some improvement" after resuming his mental health medications, but he had not yet initiated counselling. Tr. 1170. There are no subsequent chart notes from Mr. Pope or notes concerning plaintiff's mental health in the record before the Court.

Finally, contrary to the ALJ's assertion, there is no evidence that Mr. Pope consistently "urged [plaintiff] to control his blood sugar to help decrease his neuropathy." Tr. 21. Mr. Pope

---

the disability analysis," they must still "acknowledge the PHQ-9 scores and weigh them against the other evidence." *Id.* at *8 n.6.

[5] The GAD-7 is a "questionnaire for screening and measuring generalized anxiety disorder." *Tokin v. Berryhill,* 2018 WL 6991114, *4 n.1 (W.D. Wash. Sept. 28, 2018). "Scores of 5, 10, and 15 are taken as the cut-off points for mild, moderate and severe anxiety, respectively. When used as a screening tool, further evaluation is recommended when the score is 10 or greater." *Jeremy S. v. O'Malley,* 2024 WL 343179, *10 (S.D. Cal. Jan. 29, 2024) (citation omitted).

prescribed plaintiff a different medication for his neuropathy in August 2023 because the previous medication provided only a "very small amount of benefit." Tr. 1170-71. And, although plaintiff had lost 18 pounds "secondary to his very inconsistent eating," his blood sugar remained elevated and outside the target range. Tr. 1178. In any event, "it is a questionable practice to chastise" a claimant for failing to comply with dietary recommendations when mental health symptoms may be impacting their ability to do so. *See, e.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

In sum, the ALJ committed harmful legal in regard to Mr. Pope's opinion. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## II.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Page 8 – OPINION AND ORDER

As discussed herein, the ALJ committed harmful legal error in relation to the medical opinion evidence. Plaintiff, however, does not request the immediate payment of benefits and the Court agrees that further proceedings would be useful in this case. *See, e.g.*, Pl.'s Opening Br. 7 (doc. 9); Pl.'s Reply Br. 2 (doc. 11). On one hand, it is undisputed that plaintiff's depression and anxiety are longstanding and that he repeatedly cycled through periods of significant symptoms that interfered with his medical impairments. On the other hand, plaintiff's mental health symptoms seemingly decreased when his situational stressors abated, and he was compliant with medication. And, because Mr. Pope's report lacks a detailed narrative, it is unclear whether the significant physical limitations that he endorsed were temporary (i.e., related to plaintiff's health), or to what specific diagnoses they inhered.

Although not dispositive, the Court also notes that Mr. Pope's opinion was not retrospective – i.e., it did not relate plaintiff's functioning as of October 2022 (when treatment commenced) or September 2023 (when the form was completed) to the August 2019 alleged onset date. This is significant because plaintiff's mental and, by extension, physical problems seemed to increase substantially in August 2023 but then improve slightly the following month when he resumed his medications. *Cf. Morgan v. Colvin*, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) ("it is well-established that an ALJ may reject a medical opinion, even that of a treating doctor" where it does not relate to the dispositive timeframe and otherwise "was not offered as retrospective analysis") (collecting cases). And then the hearing was held the following month and plaintiff's date last insured lapsed on December 31, 2024. Tr. 17. As such, plaintiff's appeal does not speak to his functioning during the entire adjudication period.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to

Page 9 – OPINION AND ORDER

remand for further administrative proceedings). Given the complex and longstanding nature of plaintiff's mental health conditions, coupled with the remote date last insured, the use of a medical expert specializing in psychology would be helpful. Therefore, upon remand, the ALJ must consult a medical expert to review the entire record and opine as to plaintiff's functional abilities during the adjudication period and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 11th day of March, 2026.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge